AO 106 (Rev. 04/10)  Application for a Search Warrant

US DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FILED

# UNITED STATES DISTRICT COURT

OCT 0 2 2023

for the

Western District of Arkansas

Harrison Division

By_Ronald E. Dowling_____
Deputy Clerk

In the Matter of the Search of:

**Information Associated with Twitter Account(s)
@Aaron51481571 or Account(s), Using Any of the
Following Email Address:
aaronricketts294@gmail.com, OR Telephone
Number 870-414-1804 that is Stored at Premises
Controlled by X Corp.**

)
)
)
)
)
)
)

Case No. ___3:23cm00020-CDC_____

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: **Information Associated with Twitter Account(s) @Aaron51481571 or Account(s), Using Any of the Following Email Address: aaronricketts294@gmail.com, OR Telephone Number 870-414-1804 that is Stored at Premises Controlled by X Corp.**, more particularly described on Attachment A.

located in the _____Western_____ District of _____Arkansas_____ , there is now concealed *(identify the person or describe the property to be seized)*: **See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children via Production of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts:

☑ Continued on the attached sheet. **Affidavit of HSI Task Force Officer Teddy Schaeffer.**

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Teddy Schaeffer, HSI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.



Date: ___10/2/2023_____

_____
*Judge's signature*

City and state: Fayetteville, Arkansas

Christy D. Comstock, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with Twitter account(s) related to the username: @Aaron51481571, email: aaronricketts294@gmail.com, and telephone number 870-414-1804, (the "Accounts") that are stored at premises owned, maintained, controlled, or operated by X Corp., a company headquartered at 1355 Market Street, Suite 900, San Francisco, CA.

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be disclosed by X Corp.**

To the extent that the information described in Attachment A is within the possession, custody, or control of X Corp., regardless of whether such information is located within or outside of the United States, and including any communications, records, files, logs, or information that has been deleted but is still available to X Corp., or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on July 29, 2023 (Case #0333425804), X Corp. is required to disclose to the government for each account or identifier listed in Attachment A:

A.      All business records and subscriber information, in any form kept, pertaining to the Account, including:

    1.      Identity and contact information (past and current), including full name, e-mail address, physical address, date of birth, phone number, gender, and other personal identifiers;

    2.      All usernames (past and current) and the date and time each username was active, all associated accounts (including those linked by machine cookie, IP address, email address, or any other account or device identifier), and all records or other information about connections with third-party websites and mobile apps (whether active, expired, or removed);

    3.      Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

    4.      Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

    5.      All advertising information, including advertising IDs, ad activity, and ad topic preferences;

    6.      Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from January 1, 2018 to the date of issuance of the search warrant;

7.  Privacy and account settings, including change history; and

8.  Communications between X. Corp. and any person regarding the account, including contacts with support services and records of actions taken;

B.  All content, records, and other information relating to communications sent from or received by the Account from January 1, 2018 to the date of issuance of the search warrant, including but not limited to:

1.  The content of all Tweets created, drafted, favorited/liked, or retweeted by the Account, and all associated multimedia, metadata, and logs;

2.  The content of all direct messages sent from, received by, stored in draft form in, or otherwise associated with the Account, including all attachments, multimedia, header information, metadata, and logs;

C.  All other content, records, and other information relating to all other interactions between the Account and other Twitter users from January 1, 2018 to the date of issuance of the search warrant, including but not limited to:

1.  All users the Account has followed, unfollowed, muted, unmuted, blocked, or unblocked, and all users who have followed, unfollowed, muted, unmuted, blocked, or unblocked the Account;

2.  All information from the "Connect" or "Notifications" tab for the account, including all lists of Twitter users who have favorited or retweeted tweets posted by the account, as well as all tweets that include the username associated with the account (i.e., "mentions" or "replies");

3.  All contacts and related sync information; and

4.  All associated logs and metadata;

D.  All other content, records, and other information relating to the use of the Account, including but not limited to:

1.  All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

2.  All multimedia, such as digital images, video or the like, uploaded to, or otherwise associated with, the Account;

3.  All records of searches performed by the Account from January 1, 2018 to the date of issuance of the search warrant;

4.  All location information, including all location data collected by any plugins, widgets, or the "Tweet With Location" service, from from January 1, 2018 to the date of issuance of the search warrant; and

5.  All information about the Account's use of Twitter's link service, including all longer website links that were shortened by the service, all resulting

shortened links, and all information about the number of times that a link posted by the Account was clicked.

X Corp. is hereby ordered to disclose the above information to the government within fourteen (14) days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of Title 18, United States Code, Sections 2251(a), Sexual Exploitation of Children via production of child pornography and 2252A(a)(5)(B), Possession of Child Pornography, those violations involving Aaron Ricketts and any unknown individual(s) and occurring after January 1, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)   Included, but not limited to, any and all sexually explicit images of minors;

(b)   Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account owner;

(c)   Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

(d)   The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

(e)   The identity of the person(s) who communicated with the above-mentioned Account(s) about matters relating to the manufacture, possession, viewing, and distribution of child pornography, including records that help reveal their whereabouts.

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Teddy Schaeffer, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with accounts related to any of the following: Twitter username: @Aaron51481571, email: aaronricketts294@gmail.com, or telephone number 870-414-1804 that is stored at premises owned, maintained, controlled, or operated by X Corp., an electronic communications service and/or remote computing service provider headquartered at 1355 Market Street, Suite 900, San Francisco, CA.

2.     The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require X Corp. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

3.     I am a Detective with the Harrison Police Department and a Task Force Officer with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Resident Agent in Charge Office in Fayetteville, Arkansas. I have been employed with the Harrison Police Department since May of 1998, have been assigned to the Fourteenth

1

Judicial Drug Task Force of Arkansas since June 2020, have been a deputy of the Boone County Sheriff's Office since March 2023, and have been a Task Force Officer ("TFO") with HSI since April 2023. As part of my daily duties as a Detective with the Harrison Police Department and an HSI TFO, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2251A, 2422(b), 2252(a) and 2252A and Arkansas State Laws. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography, as defined in 18 U.S.C. § 2256, in all forms of media, including computer media. I have also participated in the execution of numerous search warrants and arrest warrants, a number of which involved child exploitation and/or child pornography offenses. This Affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

4.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 2251(a), Sexual Exploitation of Children via production of child pornography and 2252A(a)(5)(B), Possession of Child Pornography have been committed by Aaron Michael Ricketts – DOB: 01/20/1992 and another individual believed to be in South Carolina. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

2

## PROBABLE CAUSE

6.      On July 21, 2023, a five (5) year old female child, referred to herein as Minor Victim, was forensically interviewed at the Grandma's House Child Advocacy Center in Harrison, Arkansas.  This interview was conducted after Minor Victim told her mother that her vagina was itching but used a very explicit word rather than vagina.  Her mother was alarmed by Minor Victim's word choice as that is not a word she has ever used or heard used around her daughter. Later, Minor Victim told her mother that Aaron Ricketts, hereafter "Ricketts", put his penis on her vagina but again used explicit language to convey such.  In the forensic interview, Minor Victim further disclosed that Ricketts and Minor Victim had engaged in sexual contact multiple times and that Ricketts had told her not to tell anyone.  Ricketts resides with his father and stepmother, and Minor Victim regularly visited the house located on Watkins Road in Harrison, Arkansas.

7.      Minor Victim described that Ricketts would pull her pants and panties down and put his penis inside her vagina and would have her put his penis in her mouth.  Minor Victim stated when she put his penis in her mouth, it was soft and then would get hard.  Minor Victim described how Ricketts would use his finger to try and stretch her vagina and that when he did, it hurt; she then used her own hand to show how he would do it.

8.      Minor Victim stated that sometimes Ricketts would "squirt" on her "by accident" but that most of the time he would squirt in a trash can.  Minor Victim described that when Ricketts would squirt, it would be white or no color and compared it to ranch dressing.

9.      Minor Victim stated these things occurred in Ricketts' bedroom and that Ricketts would stop when his parents came home.  Minor Victim described Ricketts' room as having pillows on the bed and a yellow blanket.

10.     Minor Victim stated that Ricketts would spread her legs and take photos of her and that sometimes her clothes would be on and sometimes they would be off.  Minor Victim stated that Ricketts had two phones, an old and a new one.  Minor Victim disclosed that Ricketts would show her pornography on his phone; she described pornography as "sexy people doing it."

11.     On July 21, 2023, an Arkansas probation/parole visit and a search warrant were executed on the residence of Ricketts on Watkins Road, Harrison, Arkansas.  During the search, two (2) cellular devices and a small black trash can with contents were seized and photos of the residence were taken.

12.     On July 24, 2023, at approximately 2:55 pm, Investigator Tony McCutcheon of the Boone County Sheriff's Office came to the Harrison Police Department for assistance in searching the two seized cell phones.  Inv. McCutcheon provided me with a copy of a search warrant signed by the Honorable Johnny Copeland, Circuit Judge for the 14th Judicial District of Arkansas, which authorized a search of the two (2) cellular devices for evidence relevant to the Arkansas crimes of Rape and Distributing, Possessing, or Viewing Mater Depicting Sexually Explicit Conduct Involving a Child.  These devices are further identified as follows:

a.   Samsung Galaxy A13 5G cellular telephone, hereafter "D1", and

b.   LG Rebel 3 cellular telephone, hereafter "D2."

13.     During the search, in both D1 and D2, I located evidence that Ricketts had knowingly produced, possessed, viewed, and distributed child pornography, some of which documented his rape of Minor Victim.

14.     In D1 and D2, there were a total of seven (7) videos consistent with child pornography located; two of these videos were located on D1, and five (5) were located on D2.  There were a total of one-hundred-ninety-three (193) images consistent with child pornography

located. Most of these images appeared to be cache images from videos. Ninety-eight (98) images were located on D1, and ninety-five (95) were located on D2. All child pornography images and videos are consistent with Minor Victim.

15.    In D1 and amongst other logs, there was evidence of Twitter installed with the user account information using the email aaronricketts294@gmail.com. There was Twitter-related usage with over two-thousand-five-hundred (2,548) event logs in the Application Usage Log from June 25, 2023 through July 18, 2023, and six-hundred-twelve (612) notification logs in the Device Notifications log from June 24, 2023 through July 20, 2023. There was additional evidence through Chats, Cookies, Emails, Media Files, and Web History.

16.    In D2 and amongst other logs, there was evidence of Twitter installed with the user account information using the email aaronricketts294@gmail.com with the Twitter username of @Aaron51481571 and Network Usage logs. There was additional Twitter-related evidence through Chats, Instant Messages, Media Files, Emails, Cookies, and Web History.

17.    In D2, there was a message identifying a Twitter account with timestamp 4/25/2023 7:12:49 AM(UTC-5) in the Chats stating, "hello Aaron51481571 You should check this out Please help to check the account username:one134500 password:wyjy1532 balance:1455171 Login URL:uu11551 . com have a nice day".

18.    In D2, there were images indicating storage within Twitter within the image cache with the pathway of com.twitter.android. Image Pk7MxkX7itFxCY5aRxi-KbYyrQI.cnt, with a timestamp of 5/9/2023 6:35:37 PM(UTC-5), and a pathway of userdata (ExtX)/Root/data/com.twitter.android/cache/image_cache/v2.ols100.1/73/Pk7MxkX7itFxCY5aR xi-KbYyrQI.cnt, appeared to be a small topless child lying down on a bed as someone is pulling

on the waistband of the child's pants. There were at least two other images indicating storage within Twitter as follows:

    a. File Name: tmp-1529707534164103169-UMKf1i.mp4 with Created Date/Time: 4/25/2023 8:49:33 AM(UTC-5). Pathway: userdata (ExtX)/Root/media/0/Android/data/com.twitter.android/files/tmp-1529707534164103169-UMKf1i.mp4. Description: This is a thirty-two (32) second video. In the video, Minor Victim is sitting on the floor; she is wearing a pajama top and is not wearing any bottoms. The video starts with Minor Victim holding a penis and she begins to perform fellatio on the male. At the end of the video, Minor Victim lies down on her back with her legs spread, exposing her genitalia and pubic area, and whispers something unintelligible. Minor Victim is wearing a multi-blue-colored shirt from the cartoon Frozen and a pair of pink headphones. There appeared to be a yellow blanket with patterns on it in the background.

    b. File Name: tmp-1529707534164103169-zuUXr6.mp4 with a Created Date/Time: 4/13/2023 1:12:08 AM(UTC-5). Pathway: userdata (ExtX)/Root/media/0/Android/data/com.twitter.android/files/tmp-1529707534164103169-zuUXr6.mp4. Description: This is a forty-three (43) second video. In the video, Minor Victim's genitalia is exposed. A penis, believed to be an adult, is being held by a hand. At the start of the video, the penis is rubbed in between Minor Victim's labia and pushed toward the vaginal opening. The penis is being rubbed into Minor Victim's genitalia, and it appears the male is attempting to further penetrate Minor Victim's vagina and/or anus. Within the audio, it sounds

as if there is possibly a cartoon or a kids' show playing in the background. No clothing was noticed in this video.

19.    In D1 and D2, Ricketts was text messaging someone he had named "P_Bee_Xo" with the telephone number of +18646126698.  The text messages indicate that Ricketts distributed items of pornographic material involving Minor Victim and that at some point Ricketts had communicated with, or attempted to communicate with the receiver via Twitter.  Some of the pertinent messages are as follows:

    a.  Selection 1:

        i.  P_Bee_Xo on 5/1/2023 7:02:57 AM(UTC-5) - My Twitter got suspended

    b.  Selection 2:

        i.  P_Bee_Xo: 6/17/2023 9:53:52 PM(UTC-5) - Mm I bet she'll love your cum too as well as your tongue (*this is in reference to Minor Victim.*)

        ii.  P_Bee_Xo: 6/17/2023 9:54:04 PM(UTC-5) - I can't wait to see hehe

        iii.  Ricketts: 6/17/2023 9:55:09 PM(UTC-5) - She does love my tongue 😳

        iv.  P_Bee_Xo: 6/17/2023 9:55:27 PM(UTC-5) - You didn't show me daddy

        v.  P_Bee_Xo: 6/17/2023 9:55:30 PM(UTC-5) - :(

        vi.  Ricketts: 6/17/2023 9:55:47 PM(UTC-5) - One sec

        vii.  P_Bee_Xo: 6/17/2023 9:56:12 PM(UTC-5) - Wait is she there with you alone?

        viii.  Ricketts: 6/17/2023 9:56:56 PM(UTC-5) - Not rn I'm just not alone

        ix.  P_Bee_Xo: 6/17/2023 9:57:58 PM(UTC-5) - Oh okie 😊

        x.  Ricketts: 6/17/2023 10:00:26 PM(UTC-5) - (*Ricketts sends three (3) sexually explicit images - child pornography.  One (1) image of Minor*

7

*Victim performing fellatio on a male, one (1) close-up of the genitalia of a female child believed to be Minor Victim, and one (1) close-up of the genitalia and anus of a female child believed to be Minor Victim.*)

xi.  P_Bee_Xo: 6/17/2023 10:03:19 PM(UTC-5) - Mmm I wanna see her suck on it hehe

xii.  P_Bee_Xo: 6/17/2023 10:03:56 PM(UTC-5) - Her pussy is smaller than mine but I bet you can fit inside it can't you 😉

xiii.  Ricketts: 6/17/2023 10:04:46 PM(UTC-5) - I can get the head of ot in and okay baby

xiv.  Ricketts: 6/17/2023 10:05:51 PM(UTC-5) – (*Ricketts sends a video of Minor Victim performing fellatio on him.  Ricketts is identified because his face is in the video along with Minor Victim.  Ricketts appears to be the individual recording.*)

c.  Selection 3:

i.  P_Bee_Xo: 7/6/2023 9:26:00 AM(UTC-5) - Have you ever been able to fit in sissy?

ii.  Ricketts: 7/6/2023 9:27:30 AM(UTC-5) - Not yet but she does deep throat me now almost every time actually no every time she comes to see me. She says she likes to suck my cock for me....

iii.  P_Bee_Xo: 7/6/2023 9:28:10 AM(UTC-5) - Mmm I love seeing it hehe it turns me on so much I could cum twice

iv.  Ricketts: 7/6/2023 9:29:00 AM(UTC-5) - I deleted almost everything but I think I have one left of her sucking it that I missed

8

    v.   P_Bee_Xo: 7/6/2023 9:29:13 AM(UTC-5) - I wanna see you eat her out

    vi.   P_Bee_Xo: 7/6/2023 9:29:24 AM(UTC-5) - Mmm show me

    vii.   P_Bee_Xo: 7/6/2023 9:29:55 AM(UTC-5) - I bet she moans too while you do it

    viii.   Ricketts: 7/6/2023 9:30:59 AM(UTC-5) - *(Ricketts sends a video of Minor Victim performing fellatio on him. Ricketts is identified because his face is in the video along with Minor Victim. Ricketts appears to be the one recording.)*

    ix.   Ricketts: 7/6/2023 9:31:48 AM(UTC-5) - She does a little.. I do love the way that she tastes on my tongue

20.    On July 29th, 2023 at 1:48 pm, Twitter confirmed it had located and preserved all accounts associated with the Username: @Aaron51481571, the email: aaronricketts294@gmail.com, the phone number 870-414-1804, and the phone number 864-612-6698.

## BACKGROUND CONCERNING TWITTER[1]

21.    X Corp. owns and operates Twitter, a social networking and microblogging service that can be accessed at http://www.twitter.com and via the Twitter mobile application ("app"). Generally, Twitter allows users to register and create an account; to personalize (if desired) an

---

[1]    The information in this section is based on information published by Twitter on its website, including, but not limited to, the following document and webpages: "Guidelines for law enforcement," available at https://help.twitter.com/en/rules-and-policies/twitter-law-enforcement-support, "Using Twitter," available at https://help.twitter.com/en/using-twitter, and "New user FAQ," available at https://help.twitter.com/en/new-user-faq.

account profile page; and to send and receive communications via the platform. These functionalities are discussed in more detail below.

22.     Twitter permits its users to communicate via messages that can contain photos, videos, links, and/or a maximum of 280 characters of text. Users can choose to share these messages, called "Tweets," with the public or, alternatively, to "protect" their Tweets by making them viewable by only a preapproved list of "followers." Each Tweet includes a timestamp that displays when the Tweet was posted to Twitter. Users can also Tweet a copy of other Tweets ("retweet") or Tweet a reply to another Tweet. Users can also indicate that they like a Tweet by clicking on a heart icon that appears next to each Tweet on the platform.

23.     Twitter also permits its users to exchange private messages, known as "direct messages" or "DMs," with other Twitter users. DMs, which also may include photos, videos, links, and/or text, can only be viewed by the sender and designated recipient(s). Direct messages may be sent to an individual user or to a group of up to 50 Twitter users. Twitter users have the ability to choose whether they can receive a direct message from anyone. At any time, a Twitter user has the ability to alter the settings on their Twitter account so that they can receive direct messages only from (1) individuals to whom the user has already sent a direct message and (2) Twitter accounts that the user "follows" via his account.

24.     While individuals are not required to register with Twitter to view the content of unprotected Tweets, individuals must register for a Twitter account to send Tweets, to "follow" accounts in order to view protected Tweets, and to send and receive direct messages. A user may register for an account for free by visiting Twitter's website or via the Twitter app. When a user creates a new Twitter account, Twitter assigns that account a unique user ID ("UID"). A user must also select a password as well as a unique Twitter username (also known as a "handle"). Twitter

then appends the @ symbol in front of whatever username the user selects to create the Twitter username (for example: @example). The user may also select a different name (the "display name"), which is not automatically preceded by the @ symbol, to be displayed on his profile picture and at the top of his Tweets alongside his Twitter username. The display name can include symbols similar to emojis. The user can change their password, username, and/or display name at any time, but the UID for the account will remain constant.

25.     While anyone can sign up and use Twitter for free, as of November 2021 Twitter also offered a subscription model that offered users access to additional features and app customizations. This new subscription is called Twitter Blue. A user can sign up for Twitter Blue at any time. Twitter Blue allows a user to make changes to published tweets, allows users to turn on an "Undo Tweet" feature which keeps a tweet private during a set Tweet Undo period of between 5 and 60 seconds, or until the user taps "Send now," and allows users to Tweet up to 10,000 characters.

26.     At the time of Twitter account creation, X Corp. asks the user for certain identity and contact information, including: (1) name; (2) email address and/or telephone number; and (3) month and year of birth. X Corp. also keeps certain information relating to the creation of each Twitter account, including: (1) the date and time at which the user's account was created; and (2) the method of account creation (e.g., website or Twitter app).

27.     Upon the creation of a Twitter account, a generic profile page is automatically created for the user. This page displays information including (1) the user's Twitter username; (2) the display name; (3) the number of Twitter accounts the user is following; (4) the number of Twitter accounts that are following the user; and (5) Tweets sent by the user (although, as noted above, if the user has chosen to protect their Tweets they will be visible only to preapproved

11

"followers"). The user can personalize this page by posting a personal picture or image (known as an "avatar") to appear on the page and/or a banner image to appear across the top of the profile page. The user can also add text to create a short biography, to identify his location, to provide a link to his website, or to specify his date of birth.

28. As noted above, Twitter users can use their account to send and receive communications. If a Tweet includes a Twitter username that is preceded by the @ symbol, that is referred to as a "mention." The Twitter user mentioned in the Tweet will receive a notification informing them that they have been mentioned and showing the content of that Tweet. Similarly, if another Twitter user replies to a Tweet sent by a user, the user who sent the original Tweet will receive a notification that someone replied to their message, and the notification will show the content of that reply.

29. Twitter users can also include links to webpages in their Tweets and Direct Messages. Twitter automatically processes and shortens links provided by the user to a shortened link that starts http://t.co/. Twitter tracks how many times these shortened links are clicked.

30. A registered Twitter user can also "like" a Tweet by clicking a heart icon on a Tweet sent by another user. If another user "likes" a Tweet that is posted by the Twitter user, a notification will appear in the user's account identifying what Tweet was liked and who liked it.

31. As noted above, users can include photographs, images, and videos in their Tweets. Each account has a "media timeline" on their profile that displays "the photos, videos, and GIF's [the accountholder] has uploaded with [their] Tweets." An individual can view a Twitter user's media timeline by visiting the user's Twitter profile page.

32. Twitter users can also opt to Tweet with their location attached. This functionality is turned off by default, so Twitter users must opt-in to utilize it. However, if a Twitter user enables

Twitter to access their precise location information, the Twitter user will have the option of attaching their location (e.g., the name of a city or neighborhood) to a Tweet at the time it is sent. If the user uses Twitter's in-app camera to attach a photo or video to the Tweet while the functionality is enabled, the Tweet will include both the location label (e.g., the name of a city or neighborhood) of the user's choice as well as the device's precise location in the form of latitude-longitude coordinates.  The user can turn this functionality off (thereby removing their location from their Tweets) at any time, and they can delete their past location data from Tweets that have already been sent.

33.     A Twitter user may choose to "follow" another Twitter user.  If a Twitter account is unprotected (i.e., privacy settings have not been enabled), the user can follow another user simply by clicking the "follow" button on the other user's Twitter profile page.  If a Twitter account is protected (i.e., privacy settings have been enabled), the user can follow another user by clicking the "follow" button and waiting for the other user to approve their request.  Once an account is followed by a Twitter user, the Tweets posted by the account the user follows will appear in the user's Twitter Home timeline.  Every time a Twitter user follows another account, Twitter sends a notification to the account being followed to inform them about the new follower.  Each user's Twitter profile page includes a list of the people who are following that user and a list of people whom that user follows.  Twitter users can "unfollow" other users whom they previously followed at any time.  Twitter also provides users with a list of "Who to Follow," which includes a few recommendations of Twitter accounts that the user may find interesting based on the types of accounts that the user is already following and who those people follow.

34.     A Twitter user can also "block" other Twitter users.  This prevents the blocked account from contacting or following the user or from seeing the user's Tweets.  Twitter does not notify the user of a blocked account when another Twitter account blocks them.

35.     A Twitter user can also use Twitter's integrated search function.  When a user types a search term into Twitter's search tool, it will return results that include accounts, Tweets, and photos that match that search term.  Twitter users using the service via the Twitter mobile app also have the option of saving searches that they have performed.  A user can delete such saved searches at any time.

36.     A Twitter user can also join or create "Lists" of other Twitter accounts.  These Lists often organize Twitter accounts by group, topic, or interest.  Viewing a timeline of a specific List will show you a stream of Tweets made only by accounts that are on that List.  Users can pin their favorite lists to their Twitter Home timeline page.  Twitter users have the ability to remove their accounts from Lists upon which it may appear.

37.     Twitter also offers a functionality called "Spaces," which it calls "a new way to have audio conversations on Twitter."  Any user can create a Space; that user is referred to as the "host."  Spaces are public, so anyone can join and listen to the conversation within a Space once it is created, although a user can send another Twitter user a link to their Space and invite them to join.  By default, the only individuals permitted to speak in a Space are the individuals that the host invites to do so, although this setting can be modified to allow a broader set of individuals to speak.  Up to 13 people can speak in a Space at a given time.

38.     Twitter also offers the ability to sign into third-party apps and websites using one's Twitter account.  Typically, the third-party app or website will have a link that enables the user to sign into the third-party service using their Twitter account.  Doing so grants the third-party service

access to the Twitter user's account.  Depending on the authorizations the Twitter user gives to the third-party service, the third-party service may be able to read the user's Tweets, see who the user follows on Twitter, post Tweets to the user's profile, or access the user's email address.  A user can revoke a third-party app or website's authorization to access their Twitter account and associated data at any time.

39.     X Corp. collects and retains information about a user's use of the Twitter service, to include: (1) content of and metadata relating to Tweets and Direct Messages; (2) photos, images, and videos that are shared via Twitter and stored in the user's Media Timeline; (3) the identity of the accounts that a user follows and the accounts that follow the user's account; (4) the content uploaded to a user's profile page, including their avatar, banner image, and bio; (5) information about Tweets the account has liked; (6) information about Lists associated with the account; (7) information about the Spaces that a user has participated in, including the host of the Space, its start and end times, and information about other attendees; and (8) applications that are connected to the Twitter account.  X Corp. also collects and retains various other data about a user and his/her activity, including:

  a.  logs of Internet Protocol ("IP") addresses used to login to Twitter and the timestamp associated with such logins;

  b.  transactional records reflecting, for example, when a user changed their display name or email address;

  c.  the identities of accounts that are blocked or muted by the user; and

  d.  information relating to mobile devices and/or web browsers used to access the account, including a Twitter-generated identifier called a UUID that is unique to a given device.

40.     In some cases, Twitter users may communicate directly with X Corp. about issues relating to their account, such as technical problems or complaints.  Social networking providers like X Corp. typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.  X Corp. may also suspend a particular user for breaching X. Corp.'s terms of service, during which time the Twitter user will be prevented from using Twitter's services.

41.     Additionally, providers of electronic communications services and remote computing services often collect and retain user-agent information from their users.  A user agent string identifies, among other things, the browser being used, its version number, and details about the computer system used, such as operating system and version.  Using this information, the web server can provide content that is tailored to the computer user's browser and operating system.

42.     In my training and experience, evidence of who was using a Twitter account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. The information requested and to be searched will establish further information by the following means:

> a.   There is evidence to support the belief that Ricketts produced, viewed, possessed, and distributed sexually explicit videos and images of Minor Victim to at least one (1) other individual through text messaging, but there is additional evidence the sexually explicit images and/or videos were stored in the cache of the applications

Snapchat and Twitter and he potentially communicated through Twitter with the individual who is using the telephone number 864-612-6698.

b. The information requested can assist in confirming the identity of all individuals involved by means of messages, subscriber information, IP address logs, device information, location identification, photographs, videos, date of birth(s), confirming identity, followers, who their following, their posts, their replies, their likes, and other additional information retained with timestamps of the events.

43.     Based on my training and experience, direct messages, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.  Thus, stored communications and files connected to a Twitter account may provide direct evidence of the offenses under investigation and can also lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

a. As mentioned above, there is evidence to support the belief Ricketts and at least one (1) other target individual with whom he communicated by different means before they communicated via text messages, and this information may be used to confirm or exonerate Ricketts as partaking in these conversations through Twitter first.

b. This information may assist in identifying the co-conspirator(s) who communicated with Ricketts which ultimately lead to the distribution of child pornography images and videos of Minor Victim.

44.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by X Corp. can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a

17

search warrant at a residence. For example, subscriber information, messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geolocation, date and time may be evidence of who used or controlled the account at a relevant time. Similarly, device identifiers and IP addresses can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

45.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

46.     Other information connected to the use of an account may lead to the discovery of additional evidence. For example, accounts are often assigned or associated with additional identifiers such as account numbers, advertising IDs, cookies, and third-party platform subscriber identities. This information may help establish attribution, identify and link criminal activity across platforms, and reveal additional sources of evidence.

47.     Therefore, X Corp.'s servers are likely to contain stored electronic communications and information concerning subscribers and their use of Twitter. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

48.     Based on the foregoing, probable cause exists to believe there is located on the servers of X Corp., headquartered at 1355 Market Street, Suite 900, San Francisco, CA, evidence

of violations of Title 18, United States Code, Sections 2251(a), Sexual Exploitation of Children via Production of Child Pornography, and 2252A(a)(5)(B), Possession of Child Pornography. Your Affiants requests that the Court issue the proposed search warrant to X Corp. for the items set forth in Attachment "B", which is attached hereto and incorporated herein by reference, that constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2251(a) and 2252A(a)(5)(B).  Pursuant to Title 18, United States Code, Section 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on X Corp.  Because the warrant will be served on X Corp., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Teddy Schaeffer
Task Force Officer
Homeland Security Investigations
United States Department of Homeland Security

Subscribed and sworn to before me on this __2nd__ day of __October__, 2023

Honorable Christy Comstock
UNITED STATES MAGISTRATE JUDGE

19